THE BROOKLYN TRUST COMPANY AND OTHERS vs. THE TOWN OF HEBRON AND OTHERS.

The statute (Gen. Statutes, p. 83, sec. 2,) provides that notice of town meetings shall be given "by a warning set on a sign post at least five days inclusive before the meeting is to be held." Held—

1. That the term "before the meeting is to be held" means before the day on which it is to be held.

2. That the term "five days inclusive" means five days inclusive of the day on which the notice is posted but exclusive of the day on which the meeting is to be held.

3. That therefore a meeting warned on the 26th of September to be held on the 30th of September, was not legally warned.

The town of H was authorized by a resolution of the legislature to guarantee to a certain amount the second mortgage bonds of a railroad company, on the town's voting at a meeting legally called for the purpose to give such guarantee. The town at a meeting illegally warned voted to authorize its treasurer to guarantee the bonds in its name on certain conditions, one of which was that the other towns on the road should vote to guarantee a certain amount of like bonds, and another that the company's bonds of the same kind to twice the amount should be delivered to the town as collateral security. A year later, at a meeting regularly warned and held, the town voted "to let the conditions of the vote of the town to guarantee the second mortgage bonds of the N. H., M. & W. Railroad Co. remain as they now stand." Held not to be a ratification of the former invalid vote, nor to constitute, by reference to it, a vote to guarantee the bonds.

This was especially so in view of the fact that the warning of the meeting did not give notice that the matter of guaranteeing the bonds would be acted upon, while the law requires that notice be given by the warning of all matters to be brought before a town meeting.

And it seems that the fact that the other towns had guaranteed their share of the bonds, did not affect the case.

The town clerk recorded upon the records of the town the original vote, declaring it to have been passed at a meeting legally warned and held, recording also with it the warning of the meeting. He also furnished a certified copy of the full record to the railroad company for its use. Held not to estop the town from denying the legality of the vote.

[CARPENTER, J., dissenting as to the effect of the subsequent action of the town, and holding it to be estopped from denying the validity of its vote.]

[Argued May 2d—decided August 14th, 1883.]

BILL IN EQUITY to compel the defendant town to guarantee certain railroad bonds; brought to the Superior Court

in Middlesex County. Facts found by a committee and case reserved for advice. The case is sufficiently stated in the opinion of the court.

*S. L. Warner*, with whom was *R. G. Pike*, for the petitioners.

1. The warning of the town meeting of September 30th, 1871, was sufficient. 1 Swift Dig., 228; *Sands* v. *Lyon*, 18 Conn., 28; *Weeks* v. *Hull*, 19 id., 380; *Manning* v. *Dove*, 10 Rich. (So. Car.), 395.

2. The record of the town meeting and the clerk's certificate are conclusive against the town as to the warning being legal. 1 Dillon Mun. Corp., §§ 415 to 422; *Isbell* v. *N. York & N. Haven R. R. Co.*, 25 Conn., 562; *Society for Savings* v. *City of New London*, 29 id., 174; *N. Haven, Midd. & Willimantic R. R. Co.* v. *Town of Chatham*, 42. id., 465; *Commissioners of Knox County* v. *Aspinwall*, 21 How., 539; *Bissell* v. *City of Jeffersonville*, 24 id., 299; *Supervisors* v. *Schenck*, 5 Wall., 783; *St. Joseph's Township* v. *Rogers*, 16 id., 665. Parties seeing this record had a right to presume that every thing was legally done. *West School District* v. *Merrills*, 12 Conn., 437; *Fairfield County Turnpike Co* v. *Thorp*, 13 id., 173; *Lane* v. *Brainard*, 30 id., 577; *Bank of U. States* v *Dandridge*, 12 Wheat., 70; *Sargent* v. *Webster*, 13 Met., 504; *Blanchard* v. *Dow*, 32 Maine, 557.

3. The town is estopped by its subsequent conduct. Jones on Railroad Securities, § 279; *Society for Savings* v. *City of New London*, 29 Conn., 192; *N. Haven, Midd. & Willimantic R. R. Co.* v. *Town of Chatham*, 42 id., 465; *County of Randolph* v. *Post*, 93 U. S. Reps., 502; *Gould* v. *Town of Venice*, 29 Barb., 442; *Muller* v. *Pondir*, 55 N. York, 325; *Tash* v. *Adams*, 10 Cush., 252; *State ex rel. Garrett* v. *Van Horne*, 7 Ohio St., 327.

*J. Halsey* and *A. P. Hyde*, for the defendants.

1. The town meeting was not legally warned. *Hayden* v. *Noyes*, 5 Conn., 391; *Willard* v. *Borough of Killingworth*, 8 id., 247, 254; *Brownell* v. *Palmer*, 22 id., 107; *Isbell* v.

*N. York & N. Haven R. R. Co.*, 25 id., 556; *Stuart* v. *Warren*, 37 id., 225; *Moor* v. *Newfield*, 4 Maine, 44; *Brunswick* v. *McKean*, id., 508; *Jordan* v. *School District*, 38 id., 164; *Queen* v. *Aberdare Canal Co.*, 14 Queen's Bench, 854.

2. The statute authorizing the action of the town must be strictly complied with, or the action has no legal effect. *McClure* v. *Township of Oxford*, 94 U. S. Reps., 429; *The People ex. rel. Freeman* v. *Hurlburt*, 46 N. York, 110; *Town of Wellsboro'* v. *N. York & Canada R. R. Co.*, 76 id., 182, 185; *Culver* v. *Village of Port Edward*, 8 Hun, 340; *Marsh* v. *Fulton County*, 10 Wall., 676; *Lemoille Valley R. R. Co.* v. *Town of Fairfield*, 51 Verm., 257; *Society for Savings* v. *City of New London*, 29 Conn., 175; 1 Dillon Mun. Corp., §§ 108, 426; Jones on Railroad Securities, § 226.

3. The defendants are not estopped from setting up the illegality of the meeting. *Lemoille Valley R. R. Co.* v. *Town of Fairfield*, 51 Verm., 257; *School District* v. *Stone*, 106 U. S. Reps., 186. Want of power is always a defence, even against an innocent holder. 1 Dillon Mun. Corp., § 426; Jones on Railroad Securities, § 230; *East Oakland* v. *Skinner*, 94 U. S. Reps., 255; *Anthony* v. *County of Jasper*, 101 id., 693; *Buchanan* v. *Litchfield*, 102 id., 278; *Wells* v. *Supervisors*, id., 625; *Allen* v. *Louisiana*, 103 id., 80; *Ryan* v. *Lynch*, 68 Ill., 160; *Barnes* v. *Town of Lacon*, 84 id., 461; *Commissioners of Delaware County* v. *McClintock*, 51 Ind., 325.

PARDEE, J. This is a complaint, asking for the dissolution of an injunction which restrains the defendant from guaranteeing any bonds of the New Haven, Middletown and Willimantic Railroad Company, and for a mandamus compelling it to guarantee the same to a specified amount. The case has been reserved for the advice of this court.

In July, 1871, the legislature gave to the town of Hebron power to guarantee to a specified amount bonds of the New Haven, Middletown and Willimantic Railroad Company. On the 30th day of September following, a majority

of the voters of the town met and in form passed a vote in words as follows :—

"At a meeting of the legal voters of the town of Hebron, legally warned and held at the town hall in said town, on Saturday, the 30th day of September, A. D., 1871, it was voted that this town will guarantee the payment of the principal and interest of twenty-eight thousand dollars of the second mortgage bonds of the New Haven, Middletown and Willimantic Railroad Company, and receive, as collateral security therefor, fifty-six thousand dollars of the same kind of bonds, as authorized by an act of the General Assembly of this state, passed at its May session, A. D., 1871, and authorize the town treasurer to guarantee, in the name of and for the town, the payment of the principal and interest of twenty-eight thousand dollars, second mortgage bonds of the New Haven, Middletown and Willimantic Railroad Company (not to exceed that sum in the whole), receiving collateral security equal to two dollars for every one dollar so guaranteed, in the same kind of bonds which are guaranteed by the said town; said town treasurer being authorized, empowered and directed to make said guarantee and to keep a record of each bond guaranteed, the number thereof and to whom delivered, and to take a receipt for the same when the board of selectmen of the town and a majority of the board of directors of the New Haven, Middletown and Willimantic Railroad Company shall certify in writing that the following conditions have been complied with, and therefore direct the town treasurer to carry the guarantee into effect, as the work progresses, and for the purposes named in said conditions here following :—

"1. No bond shall be guaranteed except for work actually done and materials furnished the New Haven, Middletown and Willimantic Railroad Company after this date, and for interest absolutely necessary to be paid to keep possession of the road.

"2. No bonds shall be guaranteed until contracts, with security for execution, which contracts and security shall be approved by a majority of the directors of the New

Haven, Middletown and Willimantic Railroad Company, and the board of selectmen of the town, and said contracts are entered into for the entire completion, for definite sums, of the railroad, ready for running cars between Middletown and Willimantic, except for interest, as provided in the first condition.

"3. No bonds shall be guaranteed until one month's new work has been done and the estimates thereof approved by the directors of the company, except for interest, as provided in the first condition.

"4. No bonds shall be guaranteed until the carrying of the hypothecated loans, for not less than six months, on terms satisfactory to the said directors and board of selectmen, shall have been provided for, except for interest, as provided in the first condition.

"5. No bonds shall be guaranteed until the other towns on the road shall have voted to guarantee four hundred and seventy-two thousand dollars of the same kind of bonds which are guaranteed by this town.

"6. No interest or principal shall be paid by this town on bonds guaranteed by said town to the New Haven, Middletown and Willimantic Railroad Company until the road is completed and a depot located and built within fifteen rods of the crossing of the new road to Colchester (so called in said town of Hebron), and that all trains, stopping at any station on said railroad, between Portland and Willimantic, shall stop at the station in Hebron, and in case said railroad company does not comply with the foregoing conditions, they shall refund all moneys paid by said town in consequence of guaranteeing any second mortgage bonds of said railroad company."

The railroad was in operation throughout its entire length on May 1st, 1873; a depot had been built and all trains have stopped at it in accordance with the terms of the recited vote. On February 26th, 1873, the railroad company requested the defendant to guarantee to the amount of $9,600, and on March 6th, 1873, to the amount of $2,000, bonds which had been by it delivered in payment

for the construction of its road. The defendant has hitherto refused to guarantee these or any other bonds of that company. These are now the property of one of the plaintiffs; and other bonds concerning which a like request was made and refused are the property of other plaintiffs.

The voters of Hebron in town meeting assembled on March 8th, 1873, voted—"That John W. Buell is authorized to cause an injunction to be served on the town treasurer of the town of Hebron and selectmen· of said town to stop any bonds of the New Haven, Middletown and Willimantic Railroad Company or any other company from being guaranteed by said treasurer and selectmen of said town." And upon the petition of Buell the treasurer and selectmen were enjoined.

By a statute passed in 1744 writs are to be served at least twelve days inclusive before the day of sitting of the court; of this, from its enactment to this present, one interpretation has been made; namely, writs may be served on Thursday returnable to the court sitting on the second Tuesday following; Thursday to be included, Tuesday to be excluded. That is, in computing time for the purpose of notice the whole of the day at any hour during which the preparatory act is performed shall be included; and the whole of the day, at any hour during which the event takes place, to which the preparatory act points, is excluded. Thus a precise meaning, an exact measure, has been given to the word "inclusive" used in this connection.

Long subsequent to the enactment of this statute another was passed and is now in force (Gen. Statutes, p. 83, sec. 2,) providing that a "warning of a town-meeting  *  *  set on the sign-post at *least five days inclusive before the meeting is to be held,* shall be sufficient." The language of the first being "*before the day of the sitting of the court,*" of the last "*before the meeting is to be held.*"

Upon reason and precedent we think these are equivalent expressions. In *Sheets* v. *Selden's Lessee,* 2 Wall., 190, the court places a computation of time from a "particular day" upon the same footing as a computation from a "particular

event." In *Bigelow* v. *Wilson*, 1 Pick., 485, it is held that there is no distinction between a computation "from an act done" and a computation "from the day on which the act is done." In *Bemis* v. *Leonard*, 118 Mass., 502, it is held that the expression "within three days after an attachment" is equivalent to "within three days after the day on which the attachment is made;" and- that the expressions "from the.date," "from the day of the date," "from an act," and "from an· event," are synonymous. The sitting of a court is an act or an event; the meeting of the voters of a town is also an act or an event; upon these precedents the computation is to be the same when the reference is to either of these acts or events as when it is to the day upon which the act or event is to take place, or to the date, or day of the date.

Aside from precedent, presumably as the sitting of a court- is a continuing event through many successive days, the first day of the event is specifically named as the return day in bar of the possible claim of right to return on any other day of the event. But as a town meeting is the event of but one day, indicating the event exactly specifies the day.

Inasmuch as the last enactment is practically framed of a form of words of long previous use upon the statute book and of established meaning in this jurisdiction as a measure of time, it is to be presumed that in adopting the language the legislature adopted the settled interpretation, and intended by it in the last precisely what was intended by it in the first statute. Indeed it is quite certain that if it had been otherwise the change of intention would not have been left to the chance of being discovered in this slight difference in the form of expression.

If therefore we believe that we know the sense in which the legislature used the word "inclusive" in the last statute, that sense becomes the absolute law of the case; subject to no increase or diminution, an unalterable measure of time.

Tried by this standard the notice in question was posted only four days inclusive. It failed to meet the legislative

requirement. There was therefore no lawful meeting on September 30th, 1871, and of course no vote. The assembled voters are without power to act for or bind the town unless they have been called together in the statutory way and at the statutory time. · There is no opportunity for the application of the rule that the deeds of parties are to have effect rather than to be destroyed; that rights are to be upheld rather than forfeited; for if there has been no meeting, no deed has been executed, no right brought into existence, and it has been impossible for the town to have any intention; there is absolutely nothing to consider. Nor is there opportunity for the discussion of the question as to reasonableness or unreasonableness; in the presence of a statute that only can be reasonable which it requires; anything less must be unreasonable.

And the town is not estopped from denying that it has voted to guarantee any bonds by the fact that its clerk placed upon its records a copy of the vote passed at the meeting containing a declaration that it had been " legally warned and held." For, prefacing this record and as a part thereof was a copy of the warning under which the voters assembled; the illegality of that was apparent; whoever read it is to be charged with knowledge that under it no town meeting was possible ; and, in legal contemplation, the record as a whole is notice to that effect, the force of which is not to be diminished either by the unanimous declaration of the citizens or by that of the clerk in his official capacity. The statute must take precedence of these.

On September 7th, 1872, the selectmen signed a call for a special meeting of the voters of the town to be holden on the 12th day of the same month, "for the purpose of appointing a committee, who in its discretion shall agree in behalf of the town to make such use or disposition of the second mortgage collaterals of the New Haven, Middletown and Willimantic Railroad Company to be held by the town, as will in the opinion of said committee secure the immediate completion of the road of said company, and to pay the interest on such of its mortgage bonds as may be

agreed upon by said committee, and also for the purpose of taking such further action as will best secure the objects above mentioned." At the meeting holden in pursuance of this call it was voted—" That we let the conditions of the vote of the town to guarantee the second mortgage bonds of the New Haven, Middletown and Willimantic Railroad Company remain as they now stand; and that no Middletown man be allowed to address this meeting."

This is not in and of itself a vote to guarantee any bonds. It does not become such by reference to any other; for no other exists. And, as it can have no possible effect except upon a precedent vote, in the absence of such it must remain inoperative. All persons reading it were by it referred to the records of the town; an inspection of these would have disclosed the fact that there had been no previous vote and that the town owned no bonds.

Moreover, the statute (Gen. Statutes, p. 82, sec. 1) requires that "the warning of every meeting of a town * * shall specify the objects for which such meeting is to be held." The call is based upon a mistaken assumption as to a matter of fact; for the town neither owned, nor was entitled to the possession of any bonds. There is no intimation in it that the voters are to take original action upon the question whether the town shall guarantee any; it proceeds wholly upon the idea that in lawful meetings assembled they have exhausted their power in that matter, and they are summoned merely to determine what disposition they will make of bonds, the proceeds of that irrevocable action. But every voter who read the call had knowledge that the town had not voted to guarantee any bonds, and that it owned none; and he might safely absent himself from the meeting in the certainty that under the call it could not impose the burden of a guarantee upon the town.

We cannot order the town to guarantee any bonds unless it is made clear that at a lawful meeting so called as to give the voters full knowledge of its purpose they have assumed the burden; it is not to be placed upon them by inference.

The town has never placed its guarantee upon any bonds of the railroad company; and all persons who received bonds from it did so with knowledge that there was no such guarantee upon them and that their right to claim one rested upon the action of the voters on September 30th, 1871, and on September 12th, 1872, and were put upon enquiring as to the validity of the first, the legal effect of the last, and the reason for the absence of the guarantee. They are to be charged with knowledge that the first was without authority of law and that the last was not a vote to guarantee.

The Superior Court is advised to dismiss the petition.

In this opinion PARK, C. J., and LOOMIS and GRANGER, Js., concurred.

CARPENTER, J., (dissenting.) I agree that the warning for the town meeting of September 30th, 1871, was illegal; but I cannot agree that such illegality is a defense to this action.

1. A special town meeting was held on the 12th day of September, 1872, to make such use of the second mortgage collaterals of the railroad company to be held by the town as would secure the "immediate completion of the road," and to pay interest on its mortgage bonds, &c., " and also for the purpose of taking such further action as will best secure the objects above mentioned." At that meeting it was voted—" that we let the conditions of the vote of the town to guarantee the second mortgage bonds of the New Haven, Middletown and Willimantic Railroad Company remain as they now stand, and that no Middletown man be allowed to address this meeting." I regard this as a recognition of the vote as valid and as constituting a part of a valid contract. It clearly contemplates a performance of the contract by the other party and insists upon all the advantages to be derived from it. While this may not of itself be an affirmance of the previous vote, it has an important bearing in connection with the other facts upon the question of estoppel.

2. The conditions of the original vote provided, among other things, that before the bonds should be guaranteed the road should be completed to Willimantic, and that a passenger station should be located at a given place at which all passenger trains stopping at any station between Portland and Willimantic should stop. These conditions were substantially complied with on the 1st day of March, 1873. Up to this time no step had been taken by any one in behalf of the town to prevent the guarantee of the bonds under the vote, or to repudiate the agreement of which the vote formed a part. All parties acquiesced in it and the town clerk certified to the railroad company, to the other towns, and to other parties concerned, that it was a legal vote. As soon as the road was completed and trains commenced running a town meeting was held to take measures to restrain the town and its officers from performing its agreement. After the town had gained all it could or expected to gain, had in fact secured a substantial performance of the contract by the other party, then for the first time it sets up a mere technicality as a reason why it should not perform its contract. This defense so closely resembles a fraud that I cannot give it my sanction.

3. One condition of the vote was that "no bonds shall be guaranteed until the other towns on the road shall have voted to guarantee four hundred and seventy-two thousand dollars of the same kind of bonds which are guaranteed by this town." The other towns made their respective votes to depend upon a similar condition. Relying upon the legality of the vote of the defendant town, the other towns guaranteed bonds as they had agreed to, and the railroad company and contractors made and executed contracts and expended their money in constructing the road and putting it in a working condition, relying upon the town of Hebron to bear its share of the burden. But that town, with full knowledge of the circumstances, permitted the work to go forward to completion, and afterwards, on the 21st day of November, 1874, its selectmen finally refused to guarantee the bonds for the sole reason that the vote was illegal. As

I view the case it is good law as well as good morals to hold the town estopped from denying the legality of the vote; and that the contractors, who have been induced to expend their money, and those who stand in their places, may well insist upon the estoppel and that the town should perform its agreement.