STATE EX REL. MORRIS A. BEZZINI v.
WILLIAM E. HINES, TOWN CLERK OF EAST HARTFORD

SUPERIOR COURT HARTFORD COUNTY FILE NO. 75621

Memorandum filed July 26, 1946.

*William Rabinowitz,* of Hartford, for the Plaintiff.

*Ralph C. Dickson,* of East Hartford, for the Defendant.

COMLEY, J. This is an action of mandamus to compel the town clerk of East Hartford to issue a certificate to the liquor control commission that the zoning regulations of the town do not prohibit the sale of liquor at a location where the relator proposes to operate a restaurant. The respondent takes the position that there are valid zoning regulations forbidding such a business at this location.

On December 27, 1926, the town of East Hartford, at a special meeting duly warned for the purpose, voted as follows:

"Whereas the Town of East Hartford did at a Special Town Meeting held February 3rd, 1926, raise a Town Plan Commission . . . and

"Whereas it appears advisable at this time that said town of East Hartford should, in addition to said Town Plan Commission, have a Zoning Commission, and said Town of East Hartford, having failed to create a Zoning Commission under the provisions of Chapter 279, of the Public Acts of 1923, it is:

"*Voted*: That the Town of East Hartford create a Zoning Commission for that part of the Town of East Hartford lying outside the present limits of the East Hartford Fire District, which Zoning Commission shall consist of the following five members . . . and

"*Voted Further*: That the members of said Zoning Commission shall serve without compensation and shall hold office until the annual town meeting next to be held after the passage of this resolution."

 

On March 21, 1927, the zoning commission created by the above resolution formally adopted a building zone map and building zone regulations for that portion of the town lying outside the fire district. At the next annual meeting, held on October 3, 1927, five members were elected to the zoning commission. On November 21, 1927, there was held an "adjourned annual meeting" of the town. This appears to have been an adjournment of the annual meeting held on October 3, 1927, and no further warning or call was issued. The call of the annual meeting contained no reference to any proposed action on the subject of zoning. However, at this "adjourned annual meeting" on November 21, 1927, the following resolution was passed:

"*Voted*: That the building zone regulation for that portion of the town of East Hartford not situated within either the East Hartford Fire District or the East Hartford Meadow District, be and the same are hereby repealed."

On March 7, 1928, a special town meeting was held. The call of the meeting recited that one of the purposes was "to discuss and take action towards the repeal of the zoning law outside of the Fire District." At the meeting the following resolution was passed:

"*Voted*: That the application of zoning in the parts of East Hartford outside of the East Hartford Fire District and the Meadow Fire District be repealed."

In 1929, a new charter was adopted whereby the two fire districts and the town were consolidated and a new form of government created. Section 43 of the charter provided as follows:

"The town council shall be the zoning commission of and for the entire town. The zoning by-laws and ordinances existing at the time of the taking effect of this act are validated and approved and such by-laws and ordinances shall continue in force and effect . . ."

Since 1929, the zoning regulations of 1927 have been administered by the town authorities as though in full force and effect. They have been amended from time to time and have even been the subject of litigation in the Supreme Court. See *Keating* v. *Patterson*, 132 Conn., 210. It is now the relator's contention that the regulations of 1927 were repealed and that

there is now no outstanding zoning ordinance affecting that portion of the town of East Hartford in which he proposes to operate his restaurant.

The first meeting at which there was any mention of repeal was the so-called "adjourned annual meeting" of November 21, 1927. Counsel have agreed that the only warning of this meeting was the call of the regular annual meeting held on October 3, 1927. This warning makes no reference to any proposed action on the subject of zoning. While the warning for an annual town meeting need not state with accuracy or particularity such business as must by statute be transacted at such meetings, such as the number and description of the town officials to be elected, "Any other business to be transacted at the meeting must be specified in the warning, though no technical nicety is necessary in drawing the warning or in specifying the objects of the meeting." *Bedard* v. *Cunneen,* 111 Conn. 338, 341.

The meeting of November 21, 1927, was, therefore, without power to take any action with reference to zoning because of the complete absence of any reference of such business in the warning. But even had the business been properly before the meeting, the vote as actually passed at that time was ineffective to repeal zoning within the town. The statute under which the town created its zoning commission in 1926 was chapter 242 of the Public Acts of 1925, which now appears as § 423 of the General Statutes. That statute authorizes any town to appoint a zoning commission. Once appointed, all matters with reference to zoning are exclusively within the jurisdiction of the commission. It is the commission, and not the town, which promulgates the regulations, attends to theeir enforcement, and has the power to modify or repeal them. General Statutes, Chap. 29. The only power over zoning which the town retains is the power to abolish the commission and thus to repeal zoning within its borders. It cannot repeal zoning by repealing or altering or modifying the regulations, for that is the exclusive function of the commission. *Madison* v. *Kimberley,* 118 Conn. 6, 11; *Strain* v. *Mims,* 123 Conn. 275, 279.

The vote passed at the meeting of November 21, 1927, was not to abolish the zoning commission but to repeal "the building zone regulation for that portion of the Town of East Hartford not situated within either the East Hartford Fire District or the East Hartford Meadow District." That vote was clearly

beyond the power of a town meeting even though the meeting had been properly warned.

A more serious question arises with reference to the action taken by the special town meeting of March 7, 1928. The warning of that meeting specified that it was called to consider "the repeal of the zoning law outside of the Fire District." This was a sufficient warning that the subject of the abolition of zoning within the town would be brought before the meeting. But, again as in the earlier meeting, the vote was not to abolish the ommission but merely that "the application of zoning in the parts of East Hartford outside of the East Hartford Fire District and the Meadow Fire District be repealed." This language is not entirely clear. Strictly speaking, an "application" cannot be repealed. Then again, what does "application" mean? Does it refer to the enforcement of zoning or to its very existence or, perhaps, only to the regulations as they then stood? Was it intended that the zoning commission be abolished or that it be continued in office with the power to issue new and different zoning regulations? Where a statute or ordinance is ambiguous, the practical interpretation placed upon it by those charged with its administration "is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons." *Swendig* v. *Washington Water Power Co.*, 265 U. S. 322, 331; *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 195.

While it cannot be denied that the language of the resolution in question strongly indicates an intent to abolish zoning in East Hartford, that is by no means the only possible construction and it runs contrary to the interpretation placed upon it by the officers and residents of the town. So far as appears, the zoning commission as constituted on March 7, 1928, continued to function until the new charter was adopted in 1929. Then the zoning authority became the new town council. That body took over the administration and enforcement of the pre-existing regulations and has since treated them as valid and outstanding enactments. They have since been to some extent altered and amended but no one has questioned their validity as existing ordinances. For almost twenty years the residents of East Hartford have considered themselves to be subject to these regulations and, while there is no evidence to that effect, it is a fair inference that the uses and values of much property in the town have been strongly influenced by the prevailing

belief that there was legal zoning in the town. Under these circumstances, I construe the vote of March 7, 1928, as being merely an unauthorized attempt by the town meeting to interfere with the regulation of zoning and not as being an effective abolition of zoning itself.

The relator also claims that the respondent is now estopped to deny him the certificate which he seeks because a similar certificate was issued in earlier years to other applicants who conducted a restaurant on the premises. It appears that a country club was built upon the property in 1933. Under the zoning regulations a club could lawfully be operated in this part of the town and the necessary certificate was issued. Later there was a reorganization of the club and a new corporation known as The Ridge Club Corporation came into existence. One Arthur W. Martinson then obtained from the respondent a certificate that the sale of liquor in a restaurant conducted by him on the premises was permissible. The respondent testified that this certificate was issued under the mistaken belief that the restaurant was still connected with a club and not operated as a commercial enterprise. The liquor license which Martinson and his successors obtained on the strength of this certificate was continued until 1942, when the premises were taken over by the United States Army. On June 16, 1942, the license was voluntarily suspended. The relator bought the property in 1943 and obtained possession of it in April, 1945, when it was vacated by the army. He bought it for the purpose of operating a restaurant and he assumed that this was permissible because of the use made of the premises by Martinson and his successors. A sufficient answer to the relator's claim in this regard lies in the established rule that a town cannot be estopped by the mistaken or erroneous or wrongful conduct of one of its officials. *Nicholaus* v. *Bridgeport,* 117 Conn. 398, 401; *New Haven* v. *Fresenius,* 75 Conn. 145, 152; *Brooklyn Trust Co.* v. *Hebron,* 51 Conn. 22, 29.

Judgment is rendered for the respondent.