<em>Middlesex,</em><br>July, 1838.<br><br>Camp<br><em>v.</em><br>Bates.

|13|11|
|---|---|
|62|412|

### SPENCER and another *against* CHAMPION.

*Qu.* Whether in computing the time limited for the continuance after final judgment of a lien on real estate, created by attachment, the day on which the judgment was rendered, is to be included or excluded.

To preserve such lien, the execution, with the proceeding thereon, must be recorded in the town-clerk's office, within four months ; but it is not necessary that it should be returned into the office of the clerk of the court, within that period, it being sufficient if it is returned within a reasonable time afterwards.

A return on the next day after the expiration of such period, is within a reasonable time.

On a sale at the post of personal property, taken by execution, an interference by the creditor, in such a manner as to prevent competition among the bidders, is opposed to principles of public policy, and contrary to law.

But where a creditor levied his execution upon personal property, which, at its full value, was insufficient to satisfy it, and afterwards upon real estate ; it was held, that an unlawful interference by him, at the sale of the personal property, did not operate as a satisfaction of the execution, or invalidate his levy upon the real estate.

An execution may be levied upon real estate, although the creditor has attached personal property sufficient to satisfy it.

Where it was agreed between a creditor who had attached real estate, and several other creditors, who had attached the same real estate, that the latter would not interfere with the disposition of it ; it was held, that as by our law, real estate is not to be sold at auction, but is to be set off to the creditor, by

*Middlesex,*
July, 1838.

Spencer
*v.*
Champion.

appraisement, such agreement did not affect the validity of the former creditor's levy.

Where a controversy has been of long standing, and the facts fully within the knowledge of the parties, a court of chancery, on dismissing the plaintiff's bill, will allow the defendant his costs.

THIS was a bill in chancery, in which the plaintiffs, claiming as heirs at law of *Nancy Spencer*, deceased, averred, that she, during her life, had caused to be attached and set off upon execution in her favour against *The Smith Manufacturing Company*, certain real estate situated in *East-Haddam*, with a stone manufactory upon it, the legal title in which was outstanding in the defendant, and praying that it might be vested in them, as they had the legal title.

Upon a hearing of the bill and answer, the following facts were found. The plaintiffs had a legal title to the estate in question, unless the defendant, upon the facts alleged and proved, had a better title in himself. His title was founded upon the levy of certain attachments and an execution in favour of *Elias F. Parmelee* and others, which attachments were prior to that of *Nancy Spencer*. But the plaintiffs claimed, that the execution under which the defendant claimed, was not returned in due time, and had been so conducted with, by the defendant, that his levy upon the real estate was void. *Parmelee's* judgment was rendered, and execution taken out, on the 23d of *October*, 1829; levied on the 19th of *February* 1830; and returned to the office of the clerk of the court, on the 23d of *February*, 1830. Upon that execution, was also attached a large amount of personal property, principally machinery in the manufactory; after which, and before the sale under the execution, a number of creditors and others having an interest in making the assets of *The Smith Manufacturing Company* as available as possible, agreed to advance a certain sum for the property so attached, and attempted to purchase such property, or the interest in the *Parmelee* execution, and notified the defendant, the owner of such execution, that if the real estate attached was set off on execution, they would give bond to the appraisers to purchase it at a given price. On the day of sale of the personal property, these persons and many others attended; and the defendant assumed the principal direction of the sales, and caused the officer to act under his orders; to suspend the sales from time to time, and to ad-

journ from day to day ; and during the suspension, on the days of sale, the time was principally occupied, by the defendant, in attempting to convince these persons that it was not their interest to bid. This was done to prevent competition. To those who complained of these delays, he insisted he should take his own time. On the two first days, the competition was considerable ; the sales were quick ; and the property sold as near its actual value as is common at auction sales. On the third day, a compromise was made, by which the defendant and others agreed, that they would not bid upon each other, and that the purchases made by each of them should be equally divided between them. After this arrangement, there were no farther suspensions of sales or adjournments; but there was less competition, and the prices were comparatively less. The suspension and adjournment of sales caused unnecessary and unreasonable delay, and were followed by impatience and discontent among those who attended. After the sales, the defendant agreed to pay those with whom he was to divide, 1600 dollars, and take the goods they had bid off at auction ; and they, on their part, agreed, that they would not interfere with the real estate attached. The whole personal property attached, was not sufficient to satisfy the execution, in any mode of conducting the sale.

The superior court reserved the case for the consideration and advice of this court.

*Baldwin* and *Bulkley*, for the plaintiffs, contended, 1. That an execution levied on land, must be returned into the office of the clerk of the court, within four months after final judgment. Formerly, it was essential to a transfer of title, that the execution should be *returned* into the clerk's office, and there *recorded. Stat.* 282. *tit.* 63. *c.* 1. *s.* 6. (*ed.* 1808.) And this was to be done within four months. *Stat.* 60. *tit.*14. *c.* 1. *s.* 2. (*ed.* 1808.) The law was afterwards altered, by the legislature, so as to dispense with the recording in the clerk's office ; but as to the *return*, it remained the same as before. *Stat.* 37. 56. *tit.* 2. *s.* 7. 77. The return into the clerk's office is the consummating act in the transfer of title. *Kellogg* v. *Wadhams*, 9 *Conn. Rep.* 202. 208. If this is not done within the time prescribed, no title is transferred.

2. That the *Parmelee* execution was not so returned. The

rule is, that where a thing is to be performed within a given time from an act done, the day on which it is done, is to be included in the computation; and according to this rule, the return in question was too late. *Clayton's* case, 5 *Co.* 1. *Rex* v. *Adderley, Doug.* 464. *Castle* & al. v. *Burditt* & al. 3 *Term Rep.* 623. *Glassington* & al. v. *Rawlins* & al. 3 *East,* 407. 409. 1 *Sw. Dig.* 228. *Avery* v. *Stewart,* 2 *Conn. Rep.* 77. per *Hosmer,* J. *Arnold* & al. v. *The United States,* 9 *Cranch* 104. 120. *Pearpoint* & al. v. *Graham,* 4 *Wash. C. C. Rep.* 232. 240. *Saunderson* & al. v. *Gregg,* 3 *Stark. Ca.* 72. *Clarke* v. *Davey,* 4 *J. B. Moore,* 465.

3. That the conduct of the defendant in relation to the sale of the personal property on the *Parmelee* execution, was in law fraudulent. The numerous suspensions and adjournments were not for the sake of getting bidders, but to prevent competition. This conduct of the defendant, who owned the execution, and was the real creditor, manifested a design to defeat the other attaching creditors of their liens, and deprive them of all benefit from the estate attached. *Jones* v. *Caswell,* 3 *Johns. Ca.* 29. 31, 2, 3. *Doolin* v. *Ward,* 6 *Johns. Rep.* 195.

4. That the levy upon the personal property, under the circumstances, will be considered a satisfaction of the execution; and that the levy upon the real estate was void. *Troup* v. *Wood,* 4 *Johns. Ch. Rep.* 254, 5.

*Hungerford* and *W. W. Ellsworth,* contra, contended, 1. That the return of the *Parmelee* execution was sufficient. In the first place, it was within four months from the time the judgment was rendered; the judgment having been rendered on the 23d of *October,* and the return made on the 23d of *February* following. *Snyder* v. *Warren,* 2 *Cowen,* 518. Ex parte *Dean,* 2 *Cowen* 605. *Homan* v. *Liswell,* 6 *Cowen* 659. *Lester* v. *Garland,* 15 *Ves.* 248. *Windsor* v. *China,* 4 *Greenl.* 298. 304. *Wing* v. *Davis* & al. 7 *Greenl.* 31. *Bennet* v. *Nichols,* 4 *Term Rep.* 121. But secondly, the law does not require the execution to be returned into the clerk's office within four months. The statute now in force only requires the creditor to have the estate levied and *appraised and recorded,* within four months. *Stat.* 39. *tit.* 2. *c.* 1. *s.* 7. (*ed.* 1835.) By another section, (77th) it is made

the duty of the officer, *after* his proceedings have been recorded in the town-clerk's office, to return the execution into the office of the clerk of the court, whence it issued ; but no time is prescribed, within which such return is to be made. If it is made within *a reasonable time* after the expiration of the full time allowed for the anterior proceedings, it is sufficient. In this case, the return, if not made within the four months, was made the next day after that period expired.

2. That the proceedings under the execution, transferred the title to the real estate. It is not claimed that there was any thing wrong in the levy and setting off of the land ; but the objection is to the sale of the *personal* property.

In the first place, the mere seizure of the personal property, did not transfer the title, or satisfy the execution. If the property had been burned whilst in the hands of the officer, the creditor would not have borne the loss. *Thurston* v. *Mills*, 16 *East*, 274. *The King* v. *Allnutt*, 16 *East* 282. *Folsom* v. *Chesley*, 2 *N. Hamp. Rep.* 432. *Churchill* v. *Warren*, 2 *N. Hamp. Rep.* 298. *Yelv.* 44, note 2, by *Metcalf.*

Secondly, the creditor has a right to pass over the personal property, without selling it at all, and may levy the *whole sum* on the real estate. *Isham* v. *Downer*, 8 *Conn. Rep.* 282. If he may take real estate for the whole debt, he may, *a fortiori*, for the balance, after a partial satisfaction out of personal property.

Thirdly, it is not shown, in this case, that the personal property attached was *sufficient ;* but the contrary is found. The sale at the post is not the only test of value.

Fourthly, the conduct of the defendant in suspending and postponing the sales, could do no harm to the subsequent creditors, or to the debtor himself. If improper, it did not effect a satisfaction of the execution. The case falls far short of *Troup* v. *Wood*, nor is it within any principle established by *Clerk* v. *Withers.*

But fifthly, there was nothing in the conduct of the defendant legally exceptionable. On the two first days, the property in question sold for more than such property usually sells for at the post. On the third day, it is not shown that it sold for less ; that it did not sell well ; that the officer did not do what was right and proper. There were postponements at the request of the defendant. What of that ? It does not appear

*Middlesex,*
July, 1838.

Spencer
*v.*
Champion.

that they were not for good reasons. The defendant negotiated. He had a right to do so. This was consistent with the utmost fairness and legality.

WILLIAMS, Ch. J.   The questions reserved for our consideration, are, 1. Was the *Parmelee* execution returned in due time? 2. Was the conduct of the defendant with respect to the personal property sold under the execution, fraudulent as to creditors? 3. If it was, what effect ought it to have upon the levy upon the real estate?

1. On the one part, it is said, that according to the legal mode of computing time, as the defendant's judgment was rendered on the 23d of *October,* and his execution was not returned until the 23d of *February,* more than four months had elapsed, and so his lien was lost: that the rule is now settled, that when the computation of time is from an act done, the day of doing the act is included in the computation. *Clayton's* case, 5 *Co.* 1.   *The King* v. *Adderley, Doug.* 464. 1 *Sw. Dig.* 228.   *Avery* v. *Stewart,* 2 *Conn. Rep.* 77.   *The United States* v. *Arnold,* 9 *Cranch,* 104.   On the other part, it is contended, that there are many cases where the day on which an act is done is excluded from the computation *; (Lester* v. *Grant,* 15 *Ves.* 248.   Ex parte *Dean,* 2 *Cowen,* 604. *Windsor* v. *China,* 4 *Greenl.* 298. 302.   *Backus* v. *Danforth,* 2 *Conn. Rep.* 297. 300.) and that amidst so many conflicting decisions, this court will establish a uniform and permanent rule.

It is certain, that in this state, the day of the date, in some cases, is not included in computing time; yet in the service of writs, the statute directs that the day of service shall be computed, and upon notices of sales upon executions, it is believed that the day of the publication of notice has always been computed.   This court would be very unwilling, at this late period, to create a doubt as to the legality of a practice so long and so uniform, upon a subject of common business.   They would say, that such a practice could hardly have obtained so long, unless it had received the sanction of the courts.   If a doubt were now to be supposed to exist, it would create great anxiety in the minds of those who were to execute process, or were in future to be affected by it; and render the past a subject of ruinous litigation.   If a uniform rule is now to be established, it must be done by that power whose regulations are usually merely prospective.

In this case, however, it is not necessary for us to examine particularly the cases respecting the mode of computing time, as this return is valid upon either mode. Our law gives an attaching creditor a priority; but it is not to continue to an indefinite period. Where there is no incumbrance, personal property must be levied upon within sixty days, and real estate within four months. The latter must not only be levied upon, but appraised, and the execution recorded within four months. *Stat.* 37. *tit.* 2. *s.* 7. Formerly, such executions were to be recorded in the town clerk's office where the land lay, and also, in the office of the court from whence the execution issued. In 1820, so much of the act as requires that such execution should be recorded in the office of the court from which it issued, was repealed; and now, it is to be recorded only in the town clerk's office where the land lies. The statute now provides, that the officer serving such execution, shall cause it to be so recorded; and he shall then return it into the office of the clerk from which it issued. *Stat.* 58. *tit.* 2. *s.* 77. And as four months are given for the levying and recording of the execution, it is clear that the officer may take the whole of that time; and when the statute says, that *then* he shall return it, it must mean the same as if it had said, after which time—that is, after the time allowed for recording it—he shall return it. Upon no other construction can he be allowed the full time for recording it, which the statute has given him.

If it be said, that by this construction, no time is limited for the return, this is true. But where a duty is prescribed and no time is limited, the law, of course, prescribes a reasonable time. No time is fixed in which a deed is to be recorded; but it is to be done in a reasonable time; and this has been found much better than any certain time; because now, every allowance may be made for the circumstances of the parties. But the statute adds: "And all executions, served, returned and recorded as aforesaid, shall vest all the title in the creditor, his heirs and assigns." These words are not stronger, and do not create more difficulty, than the enactment respecting deeds. There it is said: "No deed shall be accounted good and effectual against any person or persons, but the grantor, &c., unless recorded as aforesaid." It was said in argument, that we can never know when an execution has vested a title in the creditor, unless the record is made within a limited time. This

argument is certainly not less strong in case of a deed; and as no considerable inconvenience has been experienced under that ancient statute, we need not anticipate any serious evils from the application of this principle to a case much more uncommon than that of title created by deed. In both cases, reasonable diligence must be used, or the rights of those claiming under an execution or a deed, would be postponed to those who, by their superior vigilance, have entitled themselves to superior legal privileges. And as this execution was returned the very next day after the time for recording it had elapsed, this must have been within a reasonable time; and so the defendant, as owner of the *Parmelee* execution, has lost no priority, to which, by his original attachment, he was entitled.

2. The next inquiry is, as to the effect of the conduct of the defendant, in the sale of the personal property. How far can it affect his right to the real estate? The defendant, who was the owner, or the agent of the owner of this execution, assumed the direction of the sale. He prescribed the time when the sales should stop, and when they should be renewed. They were frequently and suddenly suspended, at his will and pleasure, when numbers were present, and bids quick; and in answer to complaints made upon the subject, he declared he should take his own time; and the officer seems to have yielded himself to the controul of the defendant, as entirely as if he was his servant. And although we do not say, that in cases of difficulty, the officer might not advise with the creditor, or debtor, or both; yet he is not to become the tool of either. He is the minister of the law, entrusted with an important duty, essentially affecting the rights of others; and in cases where any discretion is entrusted to him, he should exercise it with all fidelity, knowing no superior but the law of the land.

In this case, the natural tendency of this interference, by the agents of the creditor, was, to create suspicion in the minds of those who attended the sale, that all was not fair; to drive away some, to disgust all, and to prevent that fair and open competition, which can alone prevent great sacrifices of property, when sold in this way. This is not all. It appears that the defendant attempted, in the intervals of sale, to persuade some of the principal bidders that it was not for their interest to purchase; and finally, on the third day, effected an arrange-

ment with them, by which the most active bidders were silenced, and a division was to be made between him and them, of the articles by them respectively purchased. The object, then, of this unnecessary delay and this negotiation, is apparent. It was to prevent the competition of those who were the most active in interfering with the views of the defendant; and, in fact, hiring them not to bid.

That such an arrangement at an auction sale, is contrary to principles of public policy, and therefore, contrary to law, has been repeatedly decided in the state of *New-York. Jones* v. *Caswell,* 3 *Johns. Ca.* 29. *Doolin* v. *Ward,* 6 *Johns. Rep.* 195. *Thompson* v. *Davies,* 13 *Johns. Rep.* 112. *Hawley* & al. v. *Cranmer* & al. 4 *Cowen,* 717. And with regard to such sales, when made under legal authority, we do not hesitate to adopt the language of Judge *Radcliff,* in the case first cited. "The law has regulated sales on execution with a jealous care, and enjoined such proceedings as are likely to promote a fair competition. A combination to prevent such competition, is contrary to morality and sound policy. It operates as a fraud upon the debtor and his remaining creditors, by depriving the former of the opportunity which he ought to possess, of obtaining a full equivalent for the property which is devoted to the payment of his debts, and opens a door for oppressive speculation." 3 *Johns. Ca.* 32. This language is precisely adapted to the case before us. It was for the interest of these debtors, as well as of their creditors, that the property seized upon this execution should go as far as possible to extinguish this debt ; and no possible motive can be assigned for the delays and negotiations of the defendant, but that he might get this property into his own hands, with as little competition as possible. Such proceedings are calculated to injure the debtor and his other creditors, and to bring reproach upon the law which authorises this involuntary disposition of the property of an unfortunate debtor, as well as of the fraudulent debtor. Nor will the law stop to inquire, whether in this particular case, actual damage has arisen. It is enough to know that such proceedings necessarily lead to fraud and oppression ; and therefore, the law must treat them, as it regards third persons, as fraudulent.

3. How far will these proceedings affect the subsequent levy upon the real estate? Upon a former occasion, it was contended, and it has now been alluded to, that the *Parmelee* execu-

*Middlesex,*
July, 1838.
———
Spencer
*v.*
Champion.

tion was satisfied, and so the levy upon the lands was void. In *England,* it has been holden, that the levy of an execution, by the sheriff, upon goods sufficient to satisfy the execution, was in itself a satisfaction, and the sheriff thereby became responsible for the debt to the creditor.  *Clerk* v. *Withers,* 1 *Salk.* 322. *S. C.* 2 *Ld. Raym.* 1072.  *Troup* v. *Wood,* 4 *Johns. Ch. Rep.* 255.  *Wilbraham* v. *Snow,* 2 *Saund.* 47. How far this principle is now carried in *Great-Britain,* seems somewhat doubtful.  *Yelv.* 44. note 2, by *Metcalf.*  *Thurston* v. *Mills,* 16 *East,* 254.

It is not necessary, however, to inquire how the law now is in that country, or whether that principle was ever adopted in this state; because the facts found in this case show, that this execution was never levied upon personal property sufficient to satisfy it.  Had this fact not been so found, it would have been very difficult to find a mode of ascertaining the value of the property seized, but by the sheriff's sale; and when fairly conducted, it must be the legal standard.

It is said, that such misconduct in a party is to be considered as a satisfaction, or equivalent to a satisfaction of the execution; and the opinion of a great judge in *Troup* v. *Wood,* 4 *Johns. Ch. Rep.* 254. is pressed upon us.  There, the execution against a person who was confined in the state prison, had been satisfied, by a settlement between the parties; and then property to thirty times the amount of the execution was sold for a nominal sum, in order to leave a balance, to feed the execution, and enable the creditor to sweep away property to an immeasurable extent in other counties.  Upon such facts, the Chancellor, in a strain of virtuous indignation, says : " The creditor, who suffers an execution which the law has lent him for his security, to be perverted to such a purpose, ought to be deprived of any further use of it.  It is satisfied and cancelled, by the force of such an act."  And he fortifies his position, by the principle above alluded to, that the sheriff having seized sufficient property, the execution was thereby satisfied and discharged; alluding also to the fact, that the property was sold for a nominal price.

In this case, the property was not sold at a nominal price; nor was the whole personal property sufficient to satisfy the execution.  And if that property, at its full value, was not sufficient to satisfy the execution, we are not able to discover

how, if sold for less than its real value, it can be said to become a satisfaction. If the party conducted fraudulently with his execution, he ought to derive no benefit from his fraudulent conduct. But by this, we do not mean to say, that his execution is satisfied. We should rather say, it remained unsatisfied. And were it not for the great principle of policy, which guards the purchasers at sales made under the authority of law, we might perhaps say, the sale was void ; and if avoided, the execution, of course, would be unsatisfied.

It has been said, that the object of the defendant was, to gain some advantage to himself, with respect to the real estate. If by our law, the real estate could not be levied upon, until the personal property was exhausted, there might be some foundation for this supposition. But it has been decided, that real estate may be attached, although the personal property is sufficient. *Isham* v. *Downer*, 8 *Conn. Rep.* 282. And the words of the act concerning executions, are almost the same as those respecting attachments. An attachment shall be served, by attaching the goods and chattels, or if none can be found, by attaching the person or lands of the defendant. *Stat.* 36. *tit.* 2. *s.* 5. As to executions, the statute prescribes, that in case personal property sufficient to satisfy the debt and charges cannot be found, and the creditor shall not agree to accept or take the debtor's lands, the body may be taken. *Stat.* 57. *tit.* 2. *s.* 75. The forms of writs are also similar: "attach the goods or estate of"——"of the goods chattels, or lands you cause to be levied." *Stat.* 242, 3. *tit.* 38. *s.* 3, 5. We think, therefore, that there can be no doubt, that if real estate can be taken by attachment, although there is sufficient personal property to satisfy the demand, the same rule is equally applicable to executions.

The defendent had, therefore, no inducement to take the mode he did with the personal estate, for the purpose of reaching the real estate ; and we cannot presume, without proof, that such was his object. It cannot be inferred, merely because he wished to prevent competition ; for that measure might have been adopted, if his only object was to get the property cheap. Nor is it found that in the negotiation during the sales, there was any allusion to the real estate.

After these sales were closed, upon the final disposition of the property purchased by the defendant and his competitors,

they agreed that they would not interfere with the real estate. There is nothing to connect this with the sales at auction; for it occurred after they were closed. It would seem, then, to be an independent transaction; and the enquiry is, whether there is, in this arrangement, any thing fraudulent. The defendant having in his hands an execution partly unsatisfied, upon which real estate is attached; other creditors having also attached the same real estate; in a sale by them to the defendent, of their auction purchases, they stipulate, that they will not interfere with the real estate. If this estate was to have been sold at auction, such an agreement would seem to have been merely to prevent competition, and therefore fraudulent, within the principles before advanced. But, as by our law, real estate is to be set off to the creditor, by appraisement, it is not easy to see what effect such a contract would have to injure any one, or what advantage would be gained, by the creditor, from such a stipulation. Were it not for the negociation which was attempted, at a very early period, between the defendant and other creditors, we might not have been able to conjecture what was intended by this part of the arrangement.

It appears that these creditors threatened the owners of this debt, that they would present to the appraisers a bond binding themselves to pay for this real estate, a certain sum of money. It is, therefore, fairly to be presumed, that when they promised not to interfere with the real estate, they referred to this fact, and intended that no such bond should be presented. Now, as no such mode of testing the value of real estate set off upon execution, is recognized by our law; as it is an expedient of at least a doubtful character, and if sanctioned, might lead to other experiments still more fallacious, we do not see any illegality or impropriety in the agreement, by which it was stipulated that such a bond should not be offered. It was only an agreement to forbear to do what no law required them to do; what certainly it is very unusual to do; and what, if permitted, might lead to practices with appraisers, which might be highly dangerous.

There is, then, in this agreement, nothing, which ought to affect the levy upon the real estate. The execution was not satisfied. The conduct of the defendent and his officer, however improper, was to be punished in another way. And to hold that the officer, or the party, should be responsible to

creditors for the injury arising from the abuse of legal pro- *New-London,*
cess, and should also be punished, by rendering void all subse- <br>
quent proceedings upon that process for the balance, does not
comport with our ideas of law or justice; and no authority has
been shown, requiring such a decision.

We think, therefore, that the plaintiff's bill must be dismiss-
ed; and as this controversy has been of long standing, so that
the facts were fully in the knowledge of the parties, we think
the defendant is entitled to costs.

BISSELL and HUNTINGTON, Js., were of the same opinion.

CHURCH, J. was absent; and WAITE, J. declined giving
any opinion, having been consulted, as counsel, in some of the
transactions out of which the suit arose.

Bill to be dismissed with costs.