FRONEBERGER v. FIRST NAT. BANK OF CHARLOTTE.

(Circuit Court of Appeals, Fourth Circuit. February 27, 1913.)

No. 1,133.

1. EXECUTION (§ 275*)—SALES—VALIDITY.
   Where the purchaser at a sale under an execution stifles bidding, the sale is voidable, but not void.
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 16, 148, 345, 791–796; Dec. Dig. § 275.*
   Fraud or other wrong in acquisition of real property as creating constructive trust, see note to Cunningham v. Pettigrew, 94 C. C. A. 485.]

2. TRUSTS (§ 365*)—CONSTRUCTIVE TRUSTS—ENFORCEMENT—LACHES.
   Laches will defeat enforcement of a constructive trust.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 568–573; Dec. Dig. § 365.*]

3. TRUSTS (§ 365*)—CONSTRUCTIVE TRUSTS—ENFORCEMENT—LACHES.
   Bill brought in 1911 to declare a bank, which in 1869 bought land under execution, to be trustee for the benefit of the debtors' creditors, on the ground that the bank stifled bidding at the sale, is barred by laches; the fraud having been discovered as early as 1877.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 568–573; Dec. Dig. § 365.*]

Appeal from the District Court of the United States for the Western District of North Carolina, at Salisbury; James E. Boyd, Judge.

Bill by Lewis B. Froneberger against the First National Bank of Charlotte. Decree dismissing the bill, and complainant appeals. Affirmed.

Lewis B. Froneberger, a citizen of Tennessee, on December 2, 1911, filed in the court below his bill against the First National Bank of Charlotte, wherein he charges substantially: That prior to October 14, 1869, D. Froneberger, C. Froneberger, and R. Froneberger, under the firm names of D. & R. Froneberger & Co., D. & C. Froneberger, and D. Froneberger & Co., were engaged in mercantile and manufacturing enterprises, were the owners in possession of large and valuable .tracts of land situate near Shelby, N. C., were largely indebted, and were unable to pay the same. That actions were brought by creditors, judgments secured, executions issued, and the lands and personal property of these partners were exposed for sale. That the First National Bank of Charlotte, among others, secured judgment against

D. Froneberger, and on October 14, 1869, the sheriff sold under execution the lands and personal property of the partners to the bank for $12,500, when the same was at the time reasonably worth $40,000, and that it secured the same at such inadequate price by unlawfully, fraudulently, and collusively suppressing bidding at the sale. That afterwards Crews, a creditor, issued another execution and caused the lands to be again exposed for sale, became the purchaser thereof, and then instituted action against the bank, the first purchaser, to secure possession, which action was tried in 1877 in a state court of competent jurisdiction, and certain issues submitted to the jury on trial were found for the plaintiff, to the effect that the bank, by its president, did fraudulently suppress the bidding at the sale at which the bank purchased the lands at $12,500, and that its cash value at the time was $40,000. That complainant has purchased for valuable consideration, and had transferred to him certain specified judgments against these debtors, aggregating $35,818.45, exclusive of interest. That the bank has sold the lands and personal property, and realized immense profit therefrom.

It is thereupon charged that the bank, by reason of its fraudulent conduct in obtaining the property at such sale, became and is a trustee for the creditors of said firms to the extent of the price realized by it out of the sale of the property, or, at least, to the extent of $27,500, the difference between $12,500, its purchase price, and $40,000, cash value of the property when sold. The bill then sets forth the reasons for the delay in its filing, to the effect that two of the Fronebergers became voluntary bankrupts in 1872; that most of the creditors were nonresidents of the state and had no knowledge of the fraud; that in 1898 and 1899 he first discovered facts and information that led him to believe that the sale was fraudulent and void, which facts and information he communicated to the nonresident creditors; that they declined to institute proceedings themselves, but entered into negotiations with him for the sale and transfer of their judgments and equities in the premises; that these negotiations were continued and not consummated until 1905; that complainant, himself a nonresident of the state, was hampered in his investigations, and, although diligent, did not succeed until within a week before suit brought in obtaining such full knowledge and evidence of the fraud as satisfied his solicitors that he could sustain such legal proceeding.

The prayer of the bill is that the bank be decreed to be a trustee for creditors and an accounting be had. On September 11, 1912, an amendment, by leave of court and with the consent of the defendant bank, was made to this bill, alleging in effect that the creditors who had assigned their judgments to complainant were, at the time such assignments were made, nonresidents of the state of North Carolina, and therefore competent to sue in the federal court if no such assignments had been made by them. To the bill a demurrer was filed, alleging substantially that on its face is shown want of equity; that the matters alleged touching the purchase by Crews at the second sale under execution, the suit instituted by him, and the matters alleged to be shown by the record thereof are irrelevant; that the judgments purchased by complainant were dormant, stale, and barred by limitation; that the same and all equities arising thereunder had been abandoned by their original owners; that complainant's cause of action, if any he had, had accrued to him more than three years prior to the institution of suit; that the judgment creditors had been guilty of laches and want of diligence; that complainant, since the assignments to him, had, after full knowledge of the facts, been guilty of laches; and that the trustee in bankruptcy of D. Froneberger and the judgment creditors were necessary parties.

The court below sustained the demurrer, and this appeal was taken.

A. H. Price, of Salisbury, N. C. (Jerome & Price, of Salisbury, N. C., on the brief), for appellant.

Charles W. Tillett, of Charlotte, N. C. (Tillett & Guthrie, of Charlotte, N. C., on the brief), for appellee.

Before GOFF, Circuit Judge, and DAYTON and SMITH, District Judges.

DAYTON, District Judge (after stating the facts as above).  [1] In Crews v. Bank, 77 N. C. 112, involving this very same purchase of lands, it is distinctly decided that the purchase of these lands by the bank was, by reason of the fraudulent conduct of its officer in suppressing bidding, a voidable sale, and not one absolutely void.  The court in that case says:

"The only question before us at present is: Was the sale at which the defendant (bank) purchased void? or did the deed of the sheriff pass the legal estate subject to any equities which may exist between the parties? If the deed is void, and may be collaterally impeached, the plaintiff is entitled to the judgment he demands; otherwise, he is not entitled to recover in this action in its present form, although he may be entitled to have the sale vacated.  Hill v. Whitfield, 48 N. C. 120, decides that the sheriff's deed to defendant conveyed the legal estate; and such seems to have been assumed as the law in Rich v. Marsh, 39 N. C. 396 [45 Am. Dec. 520], and in several other cases of a similar character.  The reason is plain.  If the sale has been made by the officer with the forms prescribed by law, the title passes by mere force of law, and only a court of equity or a court of law exercising its equitable jurisdiction can avoid it.  At the utmost, the sale was only voidable at the instance of a party injured.  Spencer v. Champion, 13 Conn. 11; Estill v. Miller, 3 Bibb [Ky.] 177; [Hawley v. Cramer], 4 Cow. [N. Y.] 717.  In many cases it would work an obvious injustice to declare the sale void because the purchaser had stifled competition and obtained the property for less than its value.  What he paid has gone to the payment of the debts of the defendant in the execution, which were a lien upon the land; and if the sale is set aside at all, it should be set aside altogether, and the purchaser put in the condition in which he was before or be subrogated to the place of the creditors pro tanto."

[2, 3] This, in our judgment, is a clear exposition of sound principles governing sales of this character.  By it is expressly determined that judicial sales, where the purchaser has stifled bidding, are not void, but only voidable.  It necessarily follows that they are not subject to attack by those who have been negligent in asserting the right to do so within the time set forth in the statutes of limitations.  Section 395 (9) Revisal 1905.  In Modlin v. Railroad Co., 145 N. C. 218, 58 S. E. 1075, this limitation is held to be three years from the time the cause of action accrued, which is defined to be the time when the fraud is discovered, or by reasonable diligence could be discovered.  It is very clear that such fraud was discovered and published to the world in the proceedings in this case of Crews v. Bank, supra, finally determined by the Supreme Court of the state in 1877, and therefore the right to avoid the sale to the bank by direct attack had long since been barred by limitation before institution of this suit.

But it is earnestly contended by complainant that all this is irrelevant, because this bill does not seek either to set aside the sale or to recover damages for the wrong done, both of which causes of action may be conceded to be barred, but, on the contrary, seeks to have the sale and sheriff's deed upheld, and declared to have constituted the bank a trustee for creditors to the extent of the profits derived by it over and above the purchase price paid, or, at least, to the extent of the difference between such purchase price and the true value of the property at the date of sale.  We are not prepared to concede that a trust relation can be decreed in the premises.  In support of the contention we are cited to 1 Perry on Trusts, 360, § 215, where it is said:

; "If at a sale of an estate of a debtor upon execution. any one announces for the purpose, of preventing competition that he is bidding or purchasing for the debtor, or if, upon the sale of the property of a deceased person, a bidder announces that he is purchasing for the benefit of children or heirs, or if, at a mortgagee's sale, a person announces that he is purchasing for the mortgagor, and thus prevents competition, the purchaser will be held to be a trustee for the benefit of the parties interested in the property. So if any one, professing to act for another, purchases for himself, he will be held as a trustee. But in such cases there must be some proof of fraud and deceit practiced by the purchaser; the mere breach of a parol agreement will not create a constructive trust in such cases; and if the conduct of the purchaser is not fraudulent, and produces no injury, a trust is not raised. If the parties for whom the ·purchaser pretends to buy have no interest in the property, they cannot establish a trust."

A clear distinction is to be drawn between cases where one secures a suppression of bidding for one interested in the property and one bidding for himself who induces others not to bid against him. In the first instance there is a fraudulent misrepresentation of his character and purpose as a bidder, if he in fact is purchasing the property for himself; in the other there is no misrepresentation, and in cases of constructive trust, in which classification this one must fall, if at all, this fraudulent misrepresentation is the vital element. Such trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is always the essential element—such fraud as warrants the application of the doctrine of equitable estoppel. When one openly seeks to purchase at judicial sale a property for himself at less than its value by persuading others not to bid against him, he does a wrong which may lose him the benefit of his purchase or subject him under proper conditions to answer for damages; but in such case there are no cestuis que trustent to claim benefit of his purchase, he having bought avowedly for himself. This is clearly shown by the numerous authorities collated in 39 Cyc. 176, 177, 180.

But, even if a constructive trust could be established here, it is to be remembered that, contrary to cases of direct trusts, the general statutes of limitations are ordinarily held to be applicable; that, where a suit in equity is brought to force upon one the character of a trustee of a constructive trust, the court will, by analogy, apply ordinarily the limitation applicable to actions at law. 39 Cyc. 607. It will always, as regards such trusts, take into consideration lapse of time and laches on the part of plaintiff. At the time this suit was instituted more than 40 years had elapsed since the sale was made—more than 34 years since the case of Crews v. Bank had been finally decided by the Supreme Court of the state in which the fraud had been ascertained and made known. Crews was a member of one of the creditor firms, whom plaintiff by assignment now represents and seeks relief for. Any reasonable diligence would have led to the ascertainment of the fraud many years ago by these creditor firms, and no grounds exist why laches should not be imputed to them and their assignee, and the statute of limitation applied.

It follows that the court below did not err in sustaining the demurrer to and dismissing the bill. Its decree will therefore be affirmed.