## Marguerite L. Nowell *v.* Ames Nowell

Superior Court     Fairfield County     File No. 118006
AT Bridgeport

Memorandum filed February 13, 1963

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the plaintiff.

*Warrack Wallace,* of Greenwich, for the defendant.

MacDonald, J. Since the first stated ground of defendant's plea in abatement to the complaint was abandoned by statement of his counsel in open court, we will turn to the second stated ground, namely, that the writ and complaint were not returned to the court "at least six days before the return day" as required by § 52-47 of our General Statutes.

It appears on the face of the record, and is not controverted, that the writ was served on the defendant on Sunday, December 2, 1962, after sundown (as shown on the officer's return) and that it was returned to the court on Wednesday, December 26, 1962, at 3:28 p.m. (as indicated by the stamp of the clerk of court). It is the defendant's contention that since there are only five "clear full days" between Wednesday, December 26 and Tuesday, January 1, the return day of the writ, the return was

made too late, in disregard of the statute, and the defendant has not been brought properly into court. In support of his position, defendant's counsel cites three decisions of our Supreme Court: *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, involving notice of a zoning hearing which, under the applicable statute, was to be published "no[t] less than ten days . . . before such hearing" and in which the court held that both terminal days are excluded and that notice published October 20 for a hearing October 30 was insufficient, since only nine days intervened; *Austin, Nichols & Co.* v. *Gilman,* 100 Conn. 81, involving an attachment matter, where the applicable language of the statute, reading "not less than fourteen days prior," was interpreted by the court as meaning fourteen intervening days, with both terminal days excluded; and *Alderman* v. *West Haven,* 124 Conn. 391, giving the same interpretation to the statutory words "at least five days" when applied to notice of a hearing on the establishment of building lines. Relying upon these authorities, defendant presents a very strong argument that the directive in § 52-47 that a writ must be returned to court "at least six days before the return day" requires that six clear, full days must intervene between the filing of the writ and the return day, and that there were only five such days between the return of this writ on December 26, 1962, and the return day of January 1, 1963.

There apparently have been no specific decisions by our Supreme Court upon the manner in which the six days' interval required by § 52-47 is to be computed. However, in several early cases concerning the time for service of process (now set forth in § 52-46), the court held that in computing that time, the day of service is to be counted and the first court day excluded. *Brooklyn Trust Co.* v. *Hebron,* 51 Conn. 22, 27; *Spencer* v. *Champion,* 13

Conn. 11, 16. In the *Spencer* case, decided in 1838, the court, at page 16, uses the following language, which appears as pertinent today as it was 125 years ago: "It is certain, that in this state, the day of the date, in some cases, is not included in computing time; yet in the service of writs, the statute directs that the day of service shall be computed, and upon notices of sales upon executions, it is believed that the day of the publication of notice has always been computed. This court would be very unwilling, at this late period, to create a doubt as to the legality of a practice so long and so uniform, upon a subject of common business. They would say, that such a practice could hardly have obtained so long, unless it had received the sanction of the courts. If a doubt were now to be supposed to exist, it would create great anxiety in the minds of those who were to execute process, or were in future to be affected by it; and render the past a subject of ruinous litigation. If a uniform rule is now to be established, it must be done by that power whose regulations are usually merely prospective." Even in *Austin, Nichols & Co.* v. *Gilman,* supra, 84, cited by defendant in support of his position, the court recognized in passing that " 'diversity of computation' " might be justified " 'in some few instances, in which long usage may have been different.' "

This court takes judicial notice of 20 Connecticut Law Journal, No. 8 (Dec. 25, 1962), containing under the heading "Court Calendar," near the top of page 1, the notation "Wednesday, December 26 —Last day to file writs for January." Since this is an official legal publication copyrighted by the secretary of state of Connecticut and published under § 51-16 of the General Statutes, the court will take judicial notice of the fact that a similar notation has appeared in the court calendar of the publication for many years indicating the last day to file

writs as the Wednesday before the return day. Also indicative of long usage and custom among Connecticut attorneys as well as officers authorized to serve process is the notation appearing for many years in the Lawyers' Diary, published by the State Bar Association of Connecticut, which indicates the last Wednesday before each "First Tuesday" return day as the "Last day to file writs" for the next month. For example, on exhibit C filed herein by plaintiff, the page for December 26, 1962, from such a diary contains the notation "Last day to file writs for January." That, of course, happens to be the date upon which the writ in question was actually returned to the court and stamped as filed by the clerk.

The documents mentioned are not cited as authorities but as indicative of a custom of long usage and practice in the courts of this state. To quote once again from *Spencer* v. *Champion,* 13 Conn. 11, 16: "This court would be very unwilling, at this late period, to create a doubt as to the legality of a practice so long and so uniform . . . . [S]uch a practice could hardly have obtained so long, unless it had received the sanction of the courts. If a doubt were now to be supposed to exist, it would . . . render the past a subject of ruinous litigation." Defendant's counsel, in his letter of February 6, 1963, addressed to the court, which has been given due consideration as a supplemental or reply brief, protests, at page 2, that "[n]o excerpt from the Lawyer's Diary or Law Journal pronouncement can overrule the legislature and repeal or modify a statute. Statutes on service are precise and mandatory; there is no room for sheriffs, clerks, or even the Supreme Court, to ignore or modify them." This seems a bit inconsistent with his own argument that the language of a statute should be interpreted as meaning what our Supreme Court said it did in the

three cases cited by him and previously discussed in this opinion. Custom is not modifying the statute, nor is the law being thrown "into the hands of sheriffs and magazine writers," as so vigorously argued by defendant. The statute is being interpreted in the light of custom and usage in accord with the century-old language of our Supreme Court in the *Spencer* case, supra.

It is the view of the court that the writ was returned "at least six days before the return day," in compliance with the statute, thus overruling the second ground of defendant's plea in abatement.

Defendant's third ground, claiming service of the writ invalid because of a claimed trick, fraud or artifice in obtaining such service, may be disposed of briefly as a matter of fact upon the evidence adduced at the hearing on the plea in abatement. From the testimony of the two parties themselves, it is obvious that the defendant was not lured by the plaintiff into coming to Connecticut but that he himself had suggested that he come up from New York, where he had been residing for some weeks, in order to obtain some clothing and personal belongings, including his passport. He had obtained legal advice to the effect that on Sunday he could not legally be served with legal process, which he indicated, quite frankly, he wished to avoid. Plaintiff likewise obtained legal advice that he could be served Sunday after sundown, and suggested that he come for his belongings "after tea." He did— and was promptly served by a waiting sheriff after sundown. There was no trickery or deceit but, at most, perhaps, a game of legal technicalities which, upon the facts rather than the law, defendant lost. Had he won, he undoubtedly would have obtained his passport, and plaintiff certainly was entitled to suspect that he might use it to good advantage. He

is not in any position to claim that he was tricked. He simply took his chances to obtain something that he needed to carry out his own plans and lost the gamble. As far as the third ground is concerned, this might be considered on the facts a classic case of what's sauce for the goose is sauce for the gander.

Defendant's plea in abatement is overruled on all three grounds.