**COMMERCIAL AIR CHARTERS, INC.**

v.

**SUNDORPH AERONAUTICAL CORPO-
RATION and Faster, Inc.**

**Civ. No. 15140.**

United States District Court,
D. Connecticut.

Nov. 28, 1972.

William P. Murray, Jr., Egan, Eagan, Jackson & Murray, Hartford, Conn., for plaintiff.

Ralph G. Elliot, Alcorn, Bakewell & Smith, Hartford, Conn., for defendants.

RULING ON MOTION TO DISMISS

CLARIE, District Judge.

This action was commenced in the Superior Court of Hartford County on May 31, 1972. The plaintiff, Commercial Air Charters, Inc., is a corporation organized under the laws of the State of Connecticut and having its principal place of business in this state. The defendant, Sundorph Aeronautical Corporation (hereinafter, Sundorph) is the surviving corporation in merger involving Sundorph, Faster Inc., and Cleveland Hangars Incorporated. It is a corporation organized under the laws of Ohio and having its principal place of business in that state. The amount in controversy exceeds $10,000 and the action has been removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

The defendant has moved to dismiss the pending action on two grounds: (1) that quasi in rem jurisdiction over its property was obtained through fraud or trickery, and (2) that the attachment of said property is invalid due to a failure of the plaintiff to follow the procedure for attachment required under Conn. Gen.Stat. § 52–284. The Court, having reviewed the various memoranda and affidavits, and having heard counsels' oral argument and the testimony of witnesses, hereby grants the defendant's motion to dismiss on the ground that jurisdiction over the defendant's property was obtained through trickery and wrongful enticement of the plaintiff within the jurisdiction.

### Facts

On or before December 1, 1971, the plaintiff allegedly paid the defendant a $10,000 deposit toward the purchase of an airplane. The defendant has allegedly failed to deliver said aircraft and, despite a demand for the return of the deposit, it has refused to pay the same. The second count of the substituted complaint alleges that the defendant, in violation of a warranty against encumbrances, sold to the plaintiff an airplane encumbered by a security interest in favor of Cleveland Hangars, Incorporated.

It is not alleged that the contract in question was entered into within the State of Connecticut. Nor is it alleged that there has been sufficient contact with the State of Connecticut to subject the defendant to the in personam jurisdiction of its courts. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Buckley v. New York Post Corp., 373 F.2d 175 (2d Cir. 1967). Rather, the sole question is whether there exists jurisdiction quasi-in-rem.

The facts disclosed at the motion hearing indicate that Richard Korzun had been a friend of Gerry Robert, President of Commercial Air Charter, Inc. (hereinafter, Commercial), since 1968. Although he was never an employee of Commercial, Korzun had on occasion flown its airplanes without fee, and it was he who initially suggested that Commercial be incorporated. Korzun was intimately acquainted with the dispute between Commercial and Sundorph and "knew" that unless Sundorph's property could be located and attached within the State of Connecticut, Commercial would be "out $10,000." As early as January of 1972, Korzun expressed an interest in locating one of Sundorph's airplanes in Connecticut and had discussed this possibility with his friends in aviation circles within and without the state. As early as March of 1972, Korzun informed Robert that, if ever he had the opportunity to get any of Sundorph's property back into Connecticut, he would do so. In furtherance of this endeavor, Korzun contacted the Federal Aviation Agency to determine which of Sundorph's airplanes had liens upon them.

In May of 1972, Korzun traveled to Illinois and Wisconsin on a business trip. Korzun represented that, upon completion of his business, he was unable to obtain a direct return flight from Chicago to Connecticut via a commercial airline on Friday evening, May 26, 1972, so he decided to charter a Sundorph airplane from Cleveland the following morning. Korzun then flew from Chicago to Cleveland, where he telephoned Sundorph's office and inquired about a charter flight from Cleveland to "Springfield, Massachusetts, or Northern Connecticut." Korzun was aware, however, that there was no airport in Springfield, and that Bradley Field in Windsor Locks, Connecticut, served both areas. Korzun chartered the Sundorph airplane, paying the $429 fee by credit

card. Before leaving Cleveland, however, he telephoned Gerry Robert, informing him that he would be arriving at Bradley Field in a twin engine airplane, either a Piper Aztec or a Commanche, so that the latter would be prepared to make the attachment.

Approximately two-thirds of the way through the trip, Korzun informed the pilot that Bradley Field would be the best place to land. Upon arrival there, both he and the pilot disembarked the airplane and entered the terminal building, where Korzun went to the men's room, made a telephone call, and suggested that he and the pilot have a cup of coffee together. Waiting at the airport for the arrival of the Sundorph airplane was Deputy Sheriff William Flaherty, his presence there having been arranged by the plaintiff's attorney. Upon seeing the pilot and passenger leave the airplane, Flaherty entered the aircraft and affixed notices of attachment to its windshield and doors, and secured the propeller of one engine with a chain and lock.

### Issue

The precise issue before the Court is whether jurisdiction will be exercised over the property of a non-resident defendant, when its presence within the state has been secured by a person privy with the plaintiff, who has gone to another state and in the normal course of the defendant's business, hired the use of that property, causing it to be transported to this jurisdiction with both the intent and knowledge that it would be attached upon its arrival.

1. *See generally* Annot., 98 A.L.R.2d 551 (1964) and Annot., 37 A.L.R. 1250 (1925).

2. Beal, The Jurisdiction of Courts over Foreigners, 26 Harv.L.Rev. 283 (1913); Developments in the Law, State Court Jurisdiction, 73 Harv.L.Rev. 909 (1960); Comment, Jurisdiction over Persons Brought into a State by Force or Fraud, 39 Yale L.J. 889 (1930); Comment,

### Discussion of Law

Although there is a substantial body of case law[1] and some commentary[2] dealing with personal service, attachment, or garnishment obtained through fraud or trickery, very few Connecticut decisions have touched upon the subject.

Both parties rely upon Siro v. American Express Co., 99 Conn. 95, 121 A. 280 (1923). In that case, a friend of the plaintiff's attorney purchased travelers' checks from the defendant's resident agent, the United States Bank, with the intention of creating within the jurisdiction a debt owing to the defendant and subject to garnishment. In sustaining the service of process, the Court distinguished the case before it from those cases in which a plaintiff, through trick or artifice, had caused a defendant "to change his location or that of his property and to move himself or it from a place without the jurisdiction of the court into the place in which process is served." *Id.* at 98–99, 121 A. at 281. The Court also noted, however, that

> "The defendant had been engaged in the business of selling travelers' checks to the public, for a profit, through its agents in this State.
>
> .    .    .    .    .    .
>
> "We know of no legal or equitable obligation which bound the plaintiff, when he accepted the defendant's proposition to buy the travelers' check and leave the purchase money with its agent, to reveal his intention to attach the money immediately. It must be admitted that he had a legal right to buy and pay for the checks in response to the defendant's request and

Service of Process: "Fair Play" for the Non-Resident Invitee, 10 Stan.L.Rev. 581 (1958); Note, Immunity of Process of One Induced by Fraud to Come to State, 10 Maryland L.Rev. 80 (1949); Note, Jurisdiction by Trickery: Enticement for Service of Process, 7 Duke L.J. 52 (1957); Note, 27 Mich.L.Rev. 575 (1929); Note, 25 Mich.L.Rev. 176 (1926).

in the regular course of its business. The intention or motive which induced him to exercise his right are of no importance. . . . There was no relationship between the plaintiff and the defendant which imposed upon the plaintiff any duty to disclose his purpose. The one was only a buyer and the other only a seller in an ordinary sale of property. Whatever might have been the effect of an active misstatement by the plaintiff in such circumstances, his mere silence was not deceitful . . . . The plaintiff's act to create a debt due to the defendant from its agent was not wrongful nor improper in itself; it was something which the defendant had solicited him to do and which was necessarily a part of the transaction proposed by the defendant.

. . . . . .

"We find nothing in the conduct of the plaintiff which should be regarded in law as a breach of faith with the defendant, or as a false representation or deceitful contrivance, and nothing by which the defendant was enticed or induced to bring his property within the jurisdiction of the courts of this state." *Id.* at 100–102, 121 A. at 282.

It is undisputed that the present case is distinguishable from *Siro*, in that here a change in the geographic location of the defendant's property did result from the activities of Korzun. However, the present case is similar to *Siro*, in that here the defendant was also "in the market place." Accordingly, the plaintiff submits that, despite the aircraft's change in geographic location, the defendant, like American Express in the *Siro* case, "experienced one of the risks of being in the market place" and "assumed certain business risks, i. e. foreign attachment in Connecticut." The Court finds this argument unpersuasive.

Putting aside the fact that the "market place" in Siro v. American Express Co., *supra*, was within the State of Con-

necticut, and that the creation of a debt within this jurisdiction was necessarily a part of the transaction contemplated by the defendant therein, the Court is of the view that the *Siro* case does not create a "market place" exception to the general rule invalidating attachments obtained by fraud or trickery. Had the *Siro* Court intended that its decision be read as creating a special rule for commercial defendants, it is unlikely that it would have so carefully distinguished those cases in which there had been a change of geographic location, and it is questionable that it would have relied upon Wood v. Wood, 78 Ky. 624 (1880). In that case the defendant was also in the "market place", yet the Court held that, completely apart from the truth or falsity of the plaintiff's representations, the attachment could not stand.

The Court in Siro v. American Express Co., *supra*, unequivocally distinguished the facts before it from those instances in which a defendant had been lured into the jurisdiction. It stated

"It is the law of this state that in a civil case the court will not exercise a jurisdiction which rests upon a service of process on a defendant who has been decoyed, enticed, or induced to come within its reach by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible." *Id.*, 99 Conn. at 99, 121 A. at 281.

Case v. Smith, Lineaweaver & Co., 152 F. 730, 732 (C.C.E.D.N.Y.1907), a decision relied upon by the Court in *Siro*, indicates that in determining whether a defendant has been wrongfully induced into a jurisdiction, "[t]he test must be whether the party seeking to take advantage has given any invitation or extended any inducement which could be considered as a guaranty of good faith." *Id.* at 732.

■ It defies common sense to submit that it was immaterial to the bargain that the chartering of the airplane was merely one step in a scheme de-

signed to impede its prompt return. In these circumstances, Korzun's very act of renting the airplane may be construed as a guaranty that he was concerned only with safe passage and that he would do, and had done, nothing to prevent its return. While it may not be said with certainty whether the United States Bank in the *Siro* case would have entered into the transaction even if it had been apprised of the facts, it can be said with certainty that Sundorph would not have entered this transaction had it known that by so doing its property would be jeopardized. Korzun's silence in these circumstances was a breach of good faith.

Moreover, by requesting a flight to "Springfield, Massachusetts or Northern Connecticut" when he knew from the beginning that Bradley Field would be their destination, Korzun actively misrepresented his intention.

"A prophecy as to the future necessarily implies the existence of facts and circumstances at the time the prophecy is made which makes its fulfillment at least possible. Hence if the speaker has peculiar knowledge of existing facts which makes the materialization of the prophecy impossible or highly improbable, he is making a misrepresentation of a fact which will support an action." 1 Harper and James, The Law of Torts 571 (1956).

See generally Annot., 51 A.L.R. 46 (1927); Annot., 68 A.L.R. 635 (1930); Annot., 91 A.L.R. 1297 (1934); Annot. 125 A.L.R. 879 (1940) and Macri v. Torello, 105 Conn. 631, 634, 136 A. 479 (1927). Having concluded that either of these two grounds is sufficient by itself to prevent an exercise of jurisdiction over the defendant's property, it is unnecessary to decide whether Korzun's activity upon arrival at the airport was also a part of the plan to acquire jurisdiction and, hence, a third independent ground for declining to exercise jurisdiction. Buchanan v. Wilson, 254 F.2d 849, 850 (6th Cir. 1958).

It is immaterial that Korzun, himself, is not a plaintiff in this action. Nor is it material that Robert, himself, did not participate in the actual chartering of the aircraft, for the facts clearly demonstrate that he was in privity with Korzun and that the latter acted in Robert's behalf. The rule in such instances is set forth in Blandin v. Ostrander, 239 F. 700 (2d Cir. 1917), a case relied upon by the Court in Siro v. American Express Co., *supra*.

"There is no evidence tending to show that Ostrander knew or suggested the means employed by Hanley to inveigle Blandin within the jurisdiction. But this is immaterial, for it is admitted that he expected assistance from Hanley in advising him regarding Blandin's whereabouts, and he thereby assumed responsibility for Hanley's methods.

"The law on this subject is familiar, though happily not often invoked. A party found within the jurisdiction may, of course, be there served; 'but it cannot be said that he was so found there, if he was inveigled or enticed into the district for the purpose of making . . . service upon him, by false representations and deceitful contrivances of the plaintiff in the suit, or by any one acting in his behalf.'" *Id.* at 702.

The fact that each of the two central steps in the plaintiff's plan to acquire jurisdiction involved activity which is inherently lawful (i. e. chartering an airplane and service of process) does not remove this case from the general rule that jurisdiction will not be exercised over a defendant who has been induced into a jurisdiction by trickery for which the plaintiff was responsible. Jaster v. Currie, 198 U.S. 144, 25 S.Ct. 614, 49 L.Ed. 988 (1905) should not be read to the contrary, for there the plaintiff neither represented nor implied that he had one motive rather than another. Moreover, the inherent legality of each act by itself is insufficient to warrant

the conclusion that the plaintiff, through Korzun, merely played "a game of legal technicalities," as in Nowell v. Nowell, 24 Conn.Supp. 314, 318, 190 A. 2d 233 (1963), for in that case the defendant himself suggested that he enter the jurisdiction, and was under the mistaken belief that process could not be served on Sundays. Finally, the plaintiff's reliance on Schwarz v. Artcraft Silk Hosiery Mills, 110 F.2d 465 (2d Cir. 1940) is also misplaced. In that case, the defendant was neither brought nor kept within the jurisdiction through enticement.

Having concluded that jurisdiction over the defendant's property may not be exercised due to the extraordinary manner by which it was brought within this state, it is unnecessary to decide whether the attachment was validly perfected under Conn.Gen.Stat. § 52–284.

Accordingly, judgment shall enter for the defendant dismissing the plaintiff's action. So ordered.